UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANTHONY WRIGHT, | : | Case No. 3:12-cv-6 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore not entitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 10-23) (ALJ's decision)).

**I.**

On April 18, 2007, Plaintiff filed applications for DIB and SSI, alleging disability since February 2, 2001, due to liver disease, hepatitis C, degenerative disc disease, bad circulation in his feet, and being apprehensive around people. (Tr. 177, 185, 200, 206). The claim was denied initially and upon reconsideration. (Tr. 113, 117, 124, 131). Thereafter, Plaintiff requested a hearing which was held before the ALJ on April 29, 2010. (Tr. 49-73). The ALJ found that Plaintiff was not disabled because he had the

residual functional capacity[1] to perform light work[2] with the following limitations: push and/or pull to include operation of hand and/or foot controls as restricted by the limitations on carrying/lifting subject to postural limitations and mental limitations of performing unskilled work that requires simple repetitive tasks and that requires occasional contact with supervisors and co-workers, and no contact with the public. (Tr. 59).

Plaintiff requested review of the ALJ's decision. (Tr. 47, 299). The Appeals Council denied review, making the ALJ's determination the final decision of the Commissioner. (Tr. 43). Pursuant to 42 U.S.C. § 405(g), Plaintiff commenced this action in federal court for judicial review of the Commissioner's final decision.

Plaintiff is 53 years old. (Tr. 21). Plaintiff has a limited education.[3] (Tr. 211). Plaintiff has relevant work history as a painter. (Tr. 63).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2007.

---

[1] A claimant's residual functional capacity ("RFC") is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1).

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of object weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal fo walking or standing, or when it involves sitting more of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

[3] It is unclear what constitutes a "limited education," and the Court was unable to locate in the record any information regarding Plaintiff's educational background.

2. The claimant has not engaged in substantial gainful activity since February 2, 2001, the alleged onset date (20 CFR §§ 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, lumbar spine; small fiber neuropathy; depression and anxiety; and a history of alcohol and substance abuse (20 CFR §§ 404.1520 (c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets of medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), with limitations: The claimant can lift and carry a maximum of 20 pounds occasionally and lift and carry up to 10 pounds frequently, stand and/or walk about 6 hours in a normal 8-hour workday, sit about 6 hours in a normal 8-hour workday, and push and/or pull to include operation of hand and/or foot controls as restricted by the limitations on carrying/lifting subject to postural limitations of never climbing ladders, ropes, or scaffolds, occasionally climbing ramps or stairs, occasionally balancing, stooping, crouching, kneeling, or crawling; an environmental limitation of avoiding concentrated exposure to work hazards (heights, moving machinery, etc.); and mental limitations of performing unskilled work that requires simple 1-, 2-, 3-, or 4-step repetitive tasks and that requires occasional contact with supervisors and co-workers, and no contact with the public.

6. The claimant is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965).

7. The claimant was born on August 11, 1959 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR §§ 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See*, SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 2, 2011, through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 12-22).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI or DIB. (Tr. 37).

On appeal, Plaintiff argues that: (1) the ALJ erred by failing to grant proper weight to the opinion of the psychological consultative examiner, Dr. Leisgang; and (2) the ALJ erred by failing to consider the combined impact of Plaintiff's physical and psychological impairments. The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359,

-4-

362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

The record evidence shows:[4]

In a Report of Contact with the Bureau of Disability Determination ("BDD") dated May 1, 2007, Plaintiff complained of low back pain, foot pain, anxiety, panic attacks, and depression. (Tr. 213). The Plaintiff was evaluated by consultative examining

---

[4] While Plaintiff alleges that he has been disabled since February 1, 2001, he fails to present any medical records or pertinent facts prior to May 1, 2007.

psychologist, Dr. Leisgang, on June 9, 2007. (Tr. 394-99). Plaintiff reported limited energy and being easily fatigued. (Tr. 396). He described his sleep as poor and stated that he was frequently depressed and cried often. (*Id*.) He reported a history of alcohol abuse and stated that he had been sober for the past two years. (Tr. 395).

On mental status examination by Dr. Leisgang, Plaintiff appeared clean and neat with adequate grooming. (Tr. 395). He did not appear to exaggerate or minimize his difficulties. (*Id*.) His flow of conversation and thought were normal. (Tr. 396). He appeared anxious, as he maintained limited eye contact, bounced his leg, picked at his skin, and sighed as if to calm himself. (*Id*.) He appeared depressed by displaying a restricted affect and downcast facial expression. (*Id*.) His attention and concentration skills and short-term memory were only marginally adequate. (Tr. 396-97). His remote recall was adequate. (*Id*.) Dr. Leisgang diagnosed depressive disorder; panic disorder with agoraphobia; and alcohol dependence in sustained full remission. (Tr 398). She assigned a GAF of 51,[5] indicative of moderate symptomology. (*Id*.)

Dr. Leisgang opined that Plaintiff's mental ability to relate to others is moderately to seriously impaired by his emotional difficulties. (Tr. 398). She opined that Plaintiff's ability to understand, remember, and follow simple instructions is moderately impaired by his emotional difficulties; however his pace may be slowed by his depressive

---

[5] The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults. A score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

symptomology.  (*Id*.)  Finally, she opined that Plaintiff is moderately impaired in his ability to withstand the stress and pressure associated with day-to-day work activity.  (*Id*.)

State Agency physicians reviewing the file in October 2007 and January 2008 opined that Plaintiff could perform light work exertionally as long as he avoided concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  (Tr. 463-69, 485).  State Agency psychologists reviewing the file in July 2007 and January 2008 granted weight to the consultative examiners' moderate restrictions, opining that Plaintiff would be capable of one-step and two-step tasks that can be carried out in situations where duties are relatively static, changes can be explained, and that do not involve working closely with others.  (Tr. 417, 484).

Treatment notes from Plaintiff's family physician, Dr. Lauricella, begin in February 2008.  (Tr. 619).  He referred Plaintiff to the Dayton Pain Center in April 2008 for treatment of his lower back degenerative joint disease.  (Tr. 587).  Plaintiff was sent for a liver needle biopsy on April 9, 2008, confirming a diagnosis of hepatitis C.  (Tr. 543).  Plaintiff was seen by gastroenterologist Dr. Knoll in May 2008, who advised that "given the nature of his depressive symptoms, coupled with the minor nature of his biopsy, I am not inclined to treat him at the present."  (Tr. 522).

Plaintiff was referred to Dr. Lawhorn, a clinical psychologist, in March 2008. (Tr. 556).  Plaintiff reported problems with relaxation, irritability, nervousness, fatigue, tearfulness, memory, concentration, and social withdrawal.  (*Id*.)  He reported a history of drug and alcohol abuse with his last alcohol use being n September 2007.  (*Id*.) On mental

status examination, Plaintiff presented with appropriate speech content and production, but with word finding and memory difficulty. (*Id*.) He demonstrated appropriate eye contact and grooming, but slowed gait, blunted and tearful affect, and hand tremors. (*Id*.) The diagnosis was adjustment disorder with mixed anxiety and depressed mood and alcohol induced persisting dementia. (*Id*.) On March 20, 2008, Dr. Lawhorn observed that Plaintiff had "little insight, motivation, or education, and has memory and concentration difficulties, which are obstacles to his psychotherapy treatment progress." (Tr. 555). Dr. Lawhorn suggested that Plaintiff seek treatment at a local mental health clinic to see a psychiatrist. (*Id*.)

Plaintiff began treatment at Samaritan Behavioral Health Center in June 2008. (Tr. 643). A diagnostic assessment was performed on June 2, 2008, at which Plaintiff complained of crying daily, weight loss, sleep disturbance, and lack of motivation. (Tr. 643). He underwent an initial psychiatric evaluation on July 22, 2008 performed by Dr. Parmelee. (Tr. 640). Plaintiff reported that he had been sober since September 2007. (*Id*.) Dr. Parmelee observed that Plaintiff's "feet do not fit in shoes today" and that they were "both brown from lack of circulation." (*Id*.) On mental status examination, Plaintiff's appearance was unkempt. (Tr. 641). His mood was depressed and anxious with a flat affect. Thought process was logical and behavior was cooperative with anhedonia. (*Id*.) Dr. Parmelee diagnosed major depressive disorder, recurrent, moderate; generalized anxiety disorder; and dependent personality disorder. (Tr. 641-42). He was assigned a GAF of 55. (Tr. 642).

Plaintiff was seen in the emergency room on August 4, 2008 after falling off a computer chair. (Tr. 558). He suffered a laceration on his right finger. On physical examination, swelling in the bilateral legs and feet was noted and was considered unrelated to the accident. (Tr. 560). Plaintiff was seen in the emergency room on August 12, 2008 for pain and swelling in the right leg. (Tr. 566). Physical examination revealed "obvious swelling" in the right lower extremity. (Tr. 563). The diagnosis was chronic edema in the bilateral lower extremities. (Tr. 578).

Plaintiff saw pain management specialist, Dr. Syed, in September 2008. (Tr. 659). Plaintiff complained of bilateral lower extremity constant pain and swelling. On physical examination, the lower extremities revealed 2+ edema in the ankles and feet with diffuse hypersensitivity with areas of excoriation on the bilateral feet. (Tr. 660). The differential diagnosis included cellulitis, superficial venous reflux, and peripheral neuropathy. (Tr. 661). Plaintiff saw Dr. Erragolla at the Dayton Pain Center on December 30, 2008 for continued pain management and began receiving epidural injections. (Tr. 719, 711, 709, 706). At the initial evaluation by Dr. Erragolla, Plaintiff demonstrated normal reflexes and strength with a positive bilateral straight leg raising test. (Tr. 720). The diagnosis was lumbar spondylosis. (*Id*.)

Plaintiff underwent a bilateral lower extremity venogram on September 18, 2008, which was negative for superficial venous reflux. (Tr. 657). Plaintiff returned to Dr. Syed in November 2008, reporting improvement in his lower extremity swelling by

approximately 50%. (Tr. 656). He continued to complain of aching pain in his lower extremities associated with heaviness, easy fatigability, itching, burning, cramping, throbbing, and stabling feelings. (*Id*.) Dr. Syed diagnosed complex regional pain syndrome. (*Id*.)

Plaintiff was seen by cardiologist, Dr. Karem, on November 6, 2008 for a cardiac evaluation of chest pain. (Tr. 671). The diagnosis was atypical chest pain, which appeared to be musculoskeletal in nature. (*Id*.)

Plaintiff underwent a lumbar MRI on February 9, 2009, which reflected multilevel disc disease with facet arthropathy and a suggestion of mild diffuse congenital spinal canal narrowing. (Tr. 676).

In addition to psychiatrist Dr. Parmelee, Plaintiff also treated with therapist, Elaine Zimmerman, at Samaritan Behavioral Health. Plaintiff reported on June 19, 2009 that he had missed approximately four months of treatment due to his pain level. (Tr. 738). Plaintiff continued with pain management specialist, Dr. Erragolla. Treatment notes from Dr. Erragolla dated between September 2009 and March 2010 found Plaintiff to demonstrate swelling and an antalgic gait flexed at the waist with a restricted range of motion. (Tr. 743, 745, 747, 749, 752, 754, 756, 758, 76, 771). Treatment notes in April 2009 and October 2009 show a positive straight leg raising test. (Tr. 762, 769). In March 2010, Dr. Erragolla sent Plaintiff for a pain autonomic function study, which resulted in a diagnosis of small fiber neuropathy. (Tr. 814-15).

Plaintiff testified that he has difficulty with his memory, crying spells, and paranoia. (Tr. 84). He testified that his last use of alcohol was "sweetest day of 2007." (*Id.*) He testified that he is able to walk about 10 steps without getting "overheated," which he described as being short of breath and having pain in his feet and legs. (Tr. 85). He testified that he is able to stand 30 minutes and sit 30 minutes. (Tr. 85-86). He testified that he has numbness going down the left side of his arm. (Tr. 87). He naps daily for approximately an hour and a half to two hours. (Tr. 87-88). He is unable to vacuum, dust, mop, or sweep due to pain. (Tr. 89).

He testified that his pain medications help his pain but cause dizziness as a side effect. (Tr. 92). He testified that his legs swell "maybe three out of the four days" in a week. (Tr. 93). He testified that the swelling is "not as bad as it used to be" and that "the doctor tells me to prop [my legs] up to where my – it's over my heart. So I try to just lay down in bed." (*Id.*) The vocational expert ("VE") testified that if a person with the same age, education, and work experience as the Plaintiff was limited in the manner determined by the ALJ, such a person could not perform Plaintiff's past relevant work, however there are other jobs in the national economy that could be performed. (Tr. 98). These jobs were listed as: assembly positions (approximately 700); inspection positions (approximately 550); and hand packaging positions (approximately 750). (*Id.*)

The ALJ posed a second hypothetical with the same limitations, except that she further limited Plaintiff to lifting and carrying only 10 pounds occasionally; less than 10

pounds frequently; and standing/walking for only 2 hours total. (*Id*.) The VE testified that there would still be jobs that could be performed. She listed these jobs as: assembly positions (approximately 550); hand packaging positions (approximately 600); and sorting positions (the number of positions was "inaudible" and was not recorded in the transcript of the proceedings). (Tr. 99). If an individual needed to alternate between sitting and standing at will during the course of the work day, the VE testified that this would have a "minimal impact" on the assembly positions, hand packaging positions, and sorter positions. (Tr. 99). If an individual would be off-task 20 percent of the work day due to interfering pain, the VE testified that competitive employment would be precluded. (*Id*.)

**B.**

First, Plaintiff maintains that the ALJ erred by failing to grant proper weight to the opinion of the psychological consultative examiner, Dr. Leisgang.

The consultative examination performed by Dr. Leisgang included a discussion of Plaintiff's functional ability in four work-related areas, including his ability to relate to others, ability to understand, remember, and follow simple instructions, ability to maintain attention, concentration, persistence, and pace, and ability to withstand the stress associated with day-to-day work activity. Dr. Leisgang opined that Plaintiff's symptoms "may" slow his work performance. (Tr. 350). However, she found no limitations in Plaintiff's ability to understand or remember simple instructions. (Tr. 350). In

concluding that Plaintiff had moderate limitations, she limited Plaintiff to unskilled work; no more than simple, 1-, 2-, 3-, or 4- step tasks; and repetitive tasks. (Tr. 17). Dr. Leisgang also precluded Plaintiff from working with the public and limited him to only occasional contact with coworkers and supervisors. (Tr. 17).

Plaintiff fails to show that the ALJ's RFC did not reasonably accommodate his limitations as opined by Dr. Leisgang. The ALJ agreed that Plaintiff had mostly moderate limitations. Accordingly, she limited Plaintiff in significant ways. For example, she restricted Plaintiff to unskilled work; no more than simple 1-, 2-, 3-, or 4- steps tasks; and repetitive tasks. (Tr. 17). She also precluded Plaintiff from working with the public, and limited him to only occasional contact with coworkers and supervisors.[6] (Tr. 17). These limitations expressly address Dr. Leisgang's findings.

## C.

Next, Plaintiff argues that the ALJ erred by failing to consider the combined impact of Plaintiff's physical and psychological impairments.

A disability may be established by a claimant suffering from a variety of medical problems, no one of which might be sufficiently disabling to prevent substantial gainful employment, but when taken together, have that result. *Hurst v. Schweiker*, 725 F.2d 53, 55-56 (6th Cir. 1984). Plaintiff maintains that the combined impact of his degenerative

---

[6] Plaintiff indicated that this anxiety is primarily related to social demands, and that he had trouble with new things and change. Additionally, Dr. Leisgang found a correlation between Plaintiff's ability to handle stress in the workplace and his "panic attacks and avoidant behavior."

disc disease, neuropathy, chronic pain syndrome, depression, and anxiety, precludes him from performing substantial gainful activity. The Court disagrees.

The ALJ repeatedly indicated that she was considering Plaintiff's impairments in combination, and, in the Sixth Circuit, such language is deemed sufficient to prove that the ALJ undertook the requisite analysis. (Tr. 12-21). *See, e.g., Smith-Marker v. Astrue*, 839 F. Supp. 2d 974, 983 (S.D. Ohio Dec. 22, 2011) ("ALJ does not necessarily need to provide a detailed 'combined effects' analysis . . . it is sufficient for the ALJ to refer to the claimant's 'impairments' (plural) and 'combination of impairments'").

Specifically, the ALJ explained in detail that her restrictions addressed Plaintiff's "severe impairments that affect his lower back and lower extremities" (Tr. 19), including Plaintiff's reports of pain and his testimony "that he has difficulty stooping, crouching, kneeling or crawling." (Tr. 20). The ALJ also imposed environmental limitations, consistent with Dr. Brown's opinion, who expressly based his opinion on the combined impairments of degenerative disc disease, poor circulation, and hepatitis C. (Tr. 422). Furthermore, the ALJ addressed Plaintiff's work-related mental limitations as explained in Section II.B, *supra*. Therefore, it is clear that the ALJ did both consider and accommodate Plaintiff's impairments in combination. *Cole v. Astrue*, No. 3:11cv199, 2012 U.S. Dist. LEXIS 46617, at *6 (S.D. Ohio Apr. 3, 2012) ("a district court can conclude that an ALJ considered a [claimant's] impairments in combination where the

decision itself suggests the ALJ did so").[7]

The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Substantial evidence supports the ALJ's finding that Plaintiff was not disabled.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Anthony Wright was not entitled to disability insurance benefits and supplemental security income, is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

---

[7] To the extent that Plaintiff implies the ALJ improperly evaluated his credibility, the Court disagrees. The ALJ properly considered the length and nature of treatment; the opinion evidence; Plaintiff's inconsistent statements about his memory, concentration and computer use; the fact that Plaintiff stopped working for reasons unrelated to his medical condition; and statements from Plaintiff suggesting that he sought medical treatment for secondary gain. (Tr. 12-21). For example, Plaintiff testified that he did not know how to use a computer. Yet during his psychological examination in June 2007, Plaintiff reported that he spends some of his day working on the computer and told his therapist in March 2008 that he spends his day watching television or playing computer poker. (Tr. 20). Additionally, when Plaintiff presented himself for mental health treatment in June 2008, he reported that he was filing for disability insurance and was seeking treatment primarily because it has been "suggested by his attorney" and that he wanted to "buy something for himself." (Tr. 20).

**IT IS SO ORDERED.**

Date: 10/2/12                                                            *s/ Timothy S. Black*
                                                                         Timothy S. Black
                                                                         United States District Judge